Michael INGRAM, Petitioner-Appellant,
v.
Thomas I. COOPER, Superintendent,
Shadow Mountain Correctional
Facility, Respondent-Appellee.

Jack Floyd PARRISH,
Petitioner-Appellant,
v.
James G. RICKETTS, Executive Director,
Department of Corrections, State of
Colorado, and Thomas I. Cooper, Su-
perintendent, Shadow Mountain Cor-
rectional Facility, Respondents-Appel-
lees.

Ben Gary ARMSTRONG,
Petitioner-Appellant,
v.
James G. RICKETTS, Executive Director,
Department of Corrections, State of
Colorado, and Thomas I. Cooper, Su-
perintendent, Shadow Mountain Cor-
rectional Facility, Respondents-Appel-
lees.

James Lee BRUEBAKER,
Petitioner-Appellant,
v.
Mark McGOFF, Superintendent,
Fremont Correctional Facility,
Respondent-Appellee.

Dennis Floyd KING,
Petitioner-Appellant,
v.
Chase RIVELAND, Executive Director of
the Colorado State Department of Cor-
rections, et al; R. Mark McGoff, Super-
intendent, Fremont Correctional Facili-
ty, et al.; Paul Watson, Time Computa-
tion Officer, Department of Correc-
tions, et al., Respondents-Appellees.

Alex ANKERICH, Petitioner-Appellant,
v.
Chase RIVELAND,
Respondent-Appellee.

Nos. 82SA437, 83SA56, 83SA57, 83SA308,
83SA326 and 84SA29.

Supreme Court of Colorado,

En Banc.

Jan. 21, 1985.

Rehearing Denied Feb. 11, 1985.

David F. Vela, Colorado State Public Defender, Barbara S. Blackman, Deputy State Public Defender, Denver, for petitioners-appellants.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for respondents-appellees.

ERICKSON, Chief Justice.

In this consolidated appeal, the petitioners are inmates at the Colorado State Penitentiary who claim they were improperly denied good-time credits under sections 17–20–104 and 17–20–105, 8 C.R.S. (1978). The petitioners assert that they are entitled to a cumulative award of good-time credits under sections 17–20–104, 17–20–105, and 17–20–107, but received actual credit only under section 17–20–107. We conclude that the district court properly interpreted Colorado statutes regarding credit reductions against the sentences imposed by allowing the petitioners good-time credits only under section 17–20–107. We therefore affirm.

I.

The petitioners were convicted of criminal offenses between 1935 and 1979, and incarcerated for various terms in the Colorado State Penitentiary. Beginning in 1982, the petitioners each filed writs of habeas corpus in the district court, alleging that the Department of Corrections improperly computed the length of their sentences by failing to award them credits for "good-time" as provided by sections 17–20–104 and 17–20–105, in addition to the good-time credits allowed under section 17–20–107.

The writs of habeas corpus were denied by the district court. The court stated that it interpreted sections 17–20–104 and 17–20–105 as providing good-time credit to persons convicted prior to September 1, 1935,

while section 17–20–107 provides credit to persons convicted on and after that date.[1] The district court found that the General Assembly intended the post-1935 good-time credits to apply independently and exclusively from the pre-1935 credits, and concluded that to permit the petitioners to receive cumulative credits under all three sections would defeat any reasonable legislative intention in providing for good-time credits. Inasmuch as the individual appeal of each petitioner raises the identical issue regarding the proper interpretation of Colorado's good-time statutes, we consolidated the cases for review.

II.

The Department of Corrections asserts that the statutes providing for good-time credits evince two separate and distinct legislative schemes, inasmuch as sections 17–20–104 and 17–20–105 allow good-time credits to persons convicted prior to September 1, 1935, while persons convicted after September 1, 1935 are entitled only to the good-time credits provided by section 17–20–107. We agree.

In interpreting any statute, the intent of the lawmaking body must be ascertained and given effect if possible. *Stephen v. City and County of Denver*, 659 P.2d 666 (Colo.1983). There is a presumption that the General Assembly intends a just and reasonable result when it enacts a statute, and a statutory construction that defeats the legislative intent or leads to an absurd result will not be followed. § 2–4–201(1)(c), 1B C.R.S. (1980); *Frohlick Crane Service, Inc. v. Mack*, 182 Colo. 34, 510 P.2d 891 (1973); *Colorado & Southern Railway v. District Court*, 177 Colo. 162, 493 P.2d 657 (1972); *Dye Const. Co. v. Dolan*, 41 Colo.App. 293, 589 P.2d 497 (1978).

1. The statutes governing good-time credits were repealed in 1984. Ch. 125, sec. 1, 1984 Colo. Sess.Laws 515; Ch. 126, sec. 2, 1984 Colo.Sess. Laws 517, 524. Good-time credits are currently governed by section 17–22.5–301, 8 C.R.S. (1984 Supp.).

Every person convicted and confined in the state penitentiary after September 1, 1935 and before September 1, 1979 who has complied with the rules and regulations of the prison and who performs work and duties in the manner prescribed by statute is entitled to credit reductions in accordance with the schedule provided in section 17–20–107(1), 8 C.R.S. (1978). Additional credit reductions for inmates designated as "trustees" and for inmates who perform outstanding or meritorious service are permitted under section 17–20–107(2) and (3), 8 C.R.S. (1978). The General Assembly provided, however, that section 17–20–107 became effective September 1, 1935, and applies only to persons convicted on and after that date. Section 17–20–109, 8 C.R.S. (1978). Inmates convicted prior to September 1, 1935 are entitled to good-time credits in accordance with the standards and schedule provided by section 17–20–104, and to "trustee" credits as provided by section 17–20–105, 8 C.R.S. (1978).

■■■ In our view, the General Assembly could not have intended to grant good-time credits to persons convicted on or after September 1, 1935 under section 17–20–104 and 17–20–105, in addition to the credits provided by section 17–20–107, as the petitioners assert. We note at the outset that the contemporaneous construction of legislation by the agency charged with its enforcement, though not controlling, is to be given deference by the courts when interpreting a statute. *Travelers Indem. Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976). At the evidentiary hearing, Edward Buckingham, an expert in corrections responsible for time computations for the Department of Corrections, stated that since the initial enactment of section 17–20–107 in 1935, good-time credits have been awarded to inmates convicted after 1935

only under the terms of section 17–20–107. The Department's consistent method of calculating good-time credits following the 1935 enactment has gone unchallenged until the filing of the present cases in 1982, and is entitled to some deference by this court.

Buckingham also presented calculations demonstrating that the amalgamation of credits under both the pre- and post-1935 good-time statutes would result in substantial reductions in the periods of actual incarceration necessary to satisfy a criminal sentence. Buckingham stated that by cumulatively awarding the credits allowed under section 17–20–104 and 17–20–105 with the credits available under section 17–20–107, an inmate sentenced to a one-year term would be eligible for release upon serving only four months and eight days of actual incarceration. An additional three months and twenty-four days of incarceration would satisfy a two-year sentence. Buckingham also testified that upon reaching the sixth year of incarceration, as reduced by applicable credit reductions, each subsequent year of sentence could be satisfied by serving only fourteen days of actual incarceration. A term of ten years could therefore be satisfied in one year, three months, and nineteen days, while a forty-year sentence could be satisfied by serving an actual term of only two years, two months, and nineteen days.[2]

■■■ As Buckingham's testimony demonstrates, the cumulative application of the pre- and post-1935 good-time statutes would produce absurd sentencing results which are contrary to the legislative scheme governing criminal penalties and statutory credit reductions. We may presume that the General Assembly was mind-

---

**2.** The computations are based upon the assumption that all credit available for good-time, trustee time, and meritorious service time is awarded. Buckingham testified that, for all practical purposes, the Department of Corrections treats the statutory good-time and trustee credits as mandatory for all inmates, while credits for meritorious time are treated as discretionary by the Department.

ful of the good-time credit statutes when it enacted the sentencing scheme for pre-1979 offenders, which authorized terms of incarceration from one to ten years for class-four felonies, five to forty years for class-three felonies, and ten to fifty years for class-two felonies. *See* § 18–1–105, 8 C.R.S. (1978); *City and County of Denver v. Rinker*, 148 Colo. 441, 366 P.2d 548 (1962) (presumption exists that General Assembly passes laws with knowledge of those already existing). We cannot conclude that the General Assembly intended to enact such lengthy criminal penalties only to have them vitiated, for all practical purposes, through a scheme of duplicative good-time credits. Such a construction would render meaningless the penalties adopted by the General Assembly and would defeat the purposes of punishment, deterrence, rehabilitation, and protection of society that, in the judgment of the General Assembly, the pre-1979 penalties were designed to accomplish.

Our conclusion that section 17–20–107 was intended as a parallel good-time provision for post-1935 offenders, and not as an addition to the credits authorized by section 17–20–104 and 17–20–105, is buttressed by the provision in chapter 48, section 556 of 1935 Colorado Statutes Annotated, the precursor of section 17–20–107, which stated that the credits allowed under the section apply "(instead of and in lieu of such time credits as were heretofore allowed by law)." While the parenthetical language does not appear in the subsequent revisions of the statute, the provision has never been deleted or amended by an express act of the General Assembly. We cannot assume that the disappearance of the parenthetical language evinces an intent to change the law to allow the cumulative amalgamation of pre- and post-1935 good-time credits, particularly in light of the absurd consequences that would result from such an assumption.

The judgment of the district court is affirmed.